# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ESCOBEDO,<br><br>    Plaintiff,<br><br>  v.<br><br>BLESSING-CO, INC., et al.,<br><br>    Defendants. | Case No.  1:24-cv-00390-JLT-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT WITH REDUCTION IN ATTORNEYS' FEES<br><br>ORDER REQUIRING SERVICE ON DEFENDANTS WITHIN THREE DAYS<br><br>(ECF No. 13)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

## I.

## INTRODUCTION

Currently before the Court is Plaintiff Jose Escobedo's ("Plaintiff") motion for default judgment, filed on October 11, 2024.  (ECF No. 13.)  Plaintiff seeks default judgment against Defendants Blessing-Co, Inc., Xiaohong Chen, Han Hong Li, Golden Tripod Restaurant Group, LLC, and Golden Tripod Restaurant, LLC.  A hearing on the motion was held on November 20, 2024.   Counsel Tanya E. Moore appeared by videoconference on behalf of Plaintiff.   No appearances were made on behalf of any Defendant via videoconference or in person, despite the courtroom being open to the public.

Having considered the moving papers, the declarations and exhibits attached thereto, the argument presented at the November 20, 2024 hearing, the nonappearance of the Defendants, and the Court's file, the Court recommends granting Plaintiff's motion for default judgment, subject to a reduction in attorneys' fees.

## II.

## BACKGROUND

### A.    Procedural History

On April 3, 2024, Plaintiff initiated this action against Defendants Blessing-Co, Inc. ("Blessing-Co"); Xiaohong Chen doing business as Moy's Restaurant ("Chen"); Han Hong Li doing business as Moy's Restaurant ("Li"); Golden Tripod Restaurant Group, LLC doing business as Noodle Q ("Golden Tripod Group"); and Golden Tripod Restaurant, LLC doing business as Noodle Q ("Golden Tripod Restaurant").  (ECF No. 1.)  Because no Defendant responded to the complaint, Plaintiff requested entry of default against each Defendant, which the Clerk of the Court entered on May 9, 2024.  (ECF Nos. 10, 11.)  On October 11, 2024, Plaintiff filed his motion for default judgment.  (ECF No. 13.)  The Court held a hearing via videoconference on November 20, 2024, whereby only counsel for Plaintiff appeared.  (ECF No. 17.)  Counsel Tanya E. Moore appeared on behalf of Plaintiff.  No one appeared on behalf of Defendant.

### B.    Allegations in the Operative Complaint

The complaint asserts claims for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12181-12189 (the "ADA"), California's Unruh Civil Rights Act (the "Unruh Act"), and Part 5.5 of the California Health and Safety Code §§ 19953 et seq. and/or Government Code § 4450 against Defendants, the purported owners/operators/leasers of restaurants Moy's Restaurant and Noodle Q (the "Facilities").  (ECF No. 1, ¶¶ 7, 16-47.)  Plaintiff alleges the Facilities are restaurants open to the public, intended for non-residential use, their operation affects commerce, and is a "public accommodation" as defined by applicable federal and state laws.  (Id. at ¶¶ 7, 9.)

Plaintiff alleges he suffers from rheumatoid arthritis, which impairs his ability to move his

joints without pain and substantially limits his ability to walk requiring a cane for mobility.  (Id. at ¶ 8.)   In addition, Plaintiff alleges he has limited dexterity due to arthritis and finger amputation.  (Id.)  Plaintiff lives less than ten miles from the Facility.  (Id. ¶ 10.)  Plaintiff visited the Moy's Restaurant on June 14, 2023, to dine; Plaintiff visited Noodle Q on June 15, 2023, to dine.  (Id.)  During the June 14, 2023 visit to Moy's Restaurant, Plaintiff alleges he encountered barriers that interfered with and denied his ability to use and enjoy the goods, services, privileges, and accommodations offered at the facility.  (Id.)  Specifically, Plaintiff identifies the following barriers:

a)  The entrance door at the Moy's Facility was heavy and closed too quickly, making it difficult for Plaintiff to open and walk through.

b)  The door to the men's restroom at the Moy's Facility had a round door knob, which was difficult for Plaintiff to grasp and turn.

c)  The locking mechanism on the door to the toilet compartment in the Moy's Facility men's restroom required tight pinching and twisting of the wrist to operate, which made it difficult for Plaintiff to use.

d)  The toilet in the Moy's Facility men's restroom was too low and there was no rear grab bar, which made it difficult for Plaintiff to lower himself and stand up from the toilet.

e)  The toilet seat cover dispenser in the Moy's Facility men's restroom toilet compartment was positioned high on the wall behind the toilet, making it difficult for Plaintiff to reach.

f)  The toilet paper dispenser in the Moy's Facility men's restroom toilet compartment was positioned too high, making it hard for Plaintiff to reach.

g)  The faucet controls on the sink in the Moy's Facility men's restroom were round and required tight grasping and twisting of the wrist to operate, making them difficult for Plaintiff to use.

h)  The paper towel dispenser in the Moy's Facility men's restroom was positioned too high, making it hard for Plaintiff to reach.

i)  The transaction counter at the Moy's Facility was obstructed by a row of chairs that were placed in front of the entire counter,

and it was difficult for Plaintiff to lean over the obstructions and reach the counter to pay for his meal.

(Id.)  During the June 15, 2023 visit to Noodle Q, Plaintiff alleges he encountered barriers that interfered with and denied his ability to use and enjoy the goods, services, privileges, and accommodations offered at the facility.   (Id.)   Specifically, Plaintiff identifies the following barriers:

> j)   There was a loose floor mat near Plaintiff's table at the Noodle Q Facility, which caught on his chair as he pushed it back creating a tripping hazard when Plaintiff got up from his chair.

> k)   The door to the men's restroom at the Noodle Q Facility was heavy and difficult for Plaintiff to open.

> l)   The locking mechanism on the door to the toilet compartment in the Noodle Q Facility men's restroom required tight pinching to operate, which made it difficult for Plaintiff to use.

> m)   The toilet in the Noodle Q Facility men's restroom was positioned too far from the side wall, which made it difficult for Plaintiff to use the side grab bar when lowering himself and standing up from the toilet, and also made it hard for him to reach the toilet paper dispenser. Additionally, the toilet seat was not properly secured, causing Plaintiff more difficulty in using the toilet.

> n)   The toilet seat cover dispenser in the Noodle Q Facility men's restroom toilet compartment was positioned high on the wall behind the toilet, making it hard for Plaintiff to reach.

> o)   The soap dispenser and paper towel dispenser in the Noodle Q Facility men's restroom were positioned too high, making them hard for Plaintiff to reach.

(Id.)  Plaintiff alleges Defendants knew or should have known of the barriers, and that they have the financial resources to remove them but refuse to do so.  (Id. at ¶ 13.)  Plaintiff claims the continued presence of the obviousness of the barriers is sufficient to establish discriminatory intent.  (Id. ¶ 15.)

As a result of the alleged barriers, Plaintiff contends the Facilities' goods, services, facilities, privileges, advantages, and accommodations were unavailable to him, and he was and

continues to be deterred from visiting the Facility.  (<u>Id.</u> at ¶ 12.)  Plaintiff contends he will return to the Facility once the barriers are moved.  (<u>Id.</u>)  Plaintiff seeks injunctive relief, statutory damages, and attorneys' fees and costs.  (<u>Id.</u> at pp. 10-11.)[1]

**III.**

**LEGAL STANDARD**

"Our starting point is the general rule that default judgments are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible."  <u>NewGen, LLC v. Safe Cig, LLC</u>, 840 F.3d 606, 616 (9th Cir. 2016) (quoting <u>Eitel v. McCool</u>, 782 F.2d 1470, 1472 (9th Cir. 1986)).  Pursuant to Federal Rule of Civil Procedure ("Rule") 55, obtaining a default judgment is a two-step process.  Entry of default is appropriate as to any party against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise.  Fed. R. Civ. P. 55(a).  After entry of default, a plaintiff can seek entry of default judgment.  Fed. R. Civ. P. 55(b).  Rule 55(b)(2) provides the framework for the Court to enter a default judgment:

> Entering a Default Judgment.
>
> (2) By the Court.  In all other cases, the party must apply to the court for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or
>
> (D) investigate any other matter.

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1    Id.

2        The decision to grant a motion for entry of default judgment is within the discretion of the

3    court.  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); see also

4    TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).  The Ninth Circuit has set

5    forth the following seven factors (the "Eitel factors") that the Court may consider in exercising its

6    discretion: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's

7    substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the

8    action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due

9    to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure

10   favoring decisions on the merits.  Eitel, 782 F.2d at 1471-72.

11       Generally, once default has been entered, "the factual allegations of the complaint, except

12   those relating to damages, will be taken as true."  Garamendi v. Henin, 683 F.3d 1069, 1080 (9th

13   Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed.

14   R. Civ. P. 8(b)(6).  The amount of damages must be proven at an evidentiary hearing or through

15   other means.  Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1236 (E.D. Cal. 2008).

16   Additionally, "necessary facts not contained in the pleadings, and claims which are legally

17   insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261,

18   1267 (9th Cir. 1992) (internal citation omitted).  The relief sought must not be different in kind or

19   exceed the amount that is demanded in the pleadings.  Fed. R. Civ. P. 54(c).

20                                        **IV.**

21                                    **DISCUSSION**

22       The Court begins by discussing jurisdiction and then turns to the Eitel factors to determine

23   whether default judgment should be entered.

24   **A.    Jurisdiction**

25       1.   Subject Matter Jurisdiction

26       Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to

27   that granted by Congress.  United States v. Sumner, 226 F.3d 1005, 1009 (9th Cir. 2000).

28

Pursuant to 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States.' "A case 'arises under' federal law either where federal law creates the cause of action or where the vindication of a right under state law necessarily turns on some construction of federal law." <u>Republican Party of Guam v. Gutierrez</u>, 277 F.3d 1086, 1088 (9th Cir. 2002) (punctuation omitted) (quoting <u>Franchise Tax Bd. v. Constr. Laborers Vacation Tr.</u>, 463 U.S. 1, 8-9 (1983) (citations omitted)). "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." <u>Id.</u> at 1089 (citations omitted).

Plaintiff brings this action alleging violations of the ADA, 42 U.S.C. § 12101, *et seq.* Therefore, the Court has original jurisdiction under 28 U.S.C. § 1331. Because the Court has original jurisdiction over Plaintiff's ADA claim, it also has the discretion to exercise supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's related state law claims pursuant to the Unruh Act, California Civil Code §§ 51, *et seq.* Here, the Court recommends exercising supplemental jurisdiction over Plaintiff's claim under the Unruh Act.

2. <u>Service of Process on Defendants</u>

Generally, the Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment. <u>See</u> <u>J & J Sports Prods., Inc. v. Singh</u>, No. 1:13-cv-1453-LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014); <u>Mason v. Genisco Tech. Corp.</u>, 960 F.2d 849, 851 (9th Cir. 1992) (stating that if party "failed to serve [defendant] in the earlier action, the default judgment is void and has no res judicata effect in this action."); <u>see</u> <u>Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc. (Direct Mail)</u>, 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4."). The Court therefore examines the propriety of service as to each Defendant.

**a. Blessing-Co, Inc.**

On April 9, 2024, Plaintiff served a copy of the summons and complaint on Blessing-Co's registered agent Abdulgalil Fadhl Hussein, by substituted service on "Mike," the purported

1   "person in charge" at "Blessing-Co, Inc.," located at 3750 West Shields Avenue, California

2   93722.  (ECF No. 8.)[2]  The process server also mailed the papers to Blessing-Co, Inc. on April 5,

3   2024, to the same address.  (Id.)  Plaintiff contends Blessing-Co., Inc, a California business entity,

4   was served pursuant to Federal Rule of Civil Procedure 4(h)(1)(A) and California Code of Civil

5   Procedure § 415.20(a).

6        Service may be completed on a corporation or LLC by delivering a copy of the summons

7   and complaint to the person designated as agent for service of process.  Cal. Code Civ. Proc. §

8   416.10(a).  As to the manner in which such service may be completed, California law provides

9   that:

10         In lieu of personal delivery of a copy of the summons and
           complaint to the person to be served as specified in section 416.20
11         . . . a summons may be served by leaving a copy of the summons
           and complaint during usual office hours in his or her office . . . with
12         the person who is apparently in charge thereof, and by thereafter
           mailing a copy of the summons and complaint by first-class mail,
13         postage prepaid to the person to be served at the place where a copy
           of the summons and complaint were left . . . .
14

15   Cal. Civ. Proc. Code § 415.20(a); see also Khourie, Crew & Jaeger v. Sabek, Inc., 220 Cal. App.

16   3d 1009, 1013 (1990).

17        Although the affidavit of service contains largely boilerplate language without many

18   factual details as to how the process server knew Mike was the person in charge or otherwise

19   authorized to receive service of process, the Court is satisfied service was properly effected under

20   California's provisions for substitute service on a corporation pursuant to section 415.20(a) on

21   Blessing-Co., Inc.

22        **b.  Xiaohong Chen, doing business as Moy's Restaurant**

23        Plaintiff proffers he served a copy of the summons and complaint on Xiaohong Chen on

24   April 11, 2024, by personal service on Chen at 2636 East Ashlan Avenue, Fresno, California

25   ─────────────

26   [2] The Court notes the California Secretary of State's website lists Abdulgalil Fadhl Hussein, located at 3750 W
     Shields Ave, Fresno, California 93722, as the agent authorized to accept service of process for Blessing-Co, Inc.

27   Business search results for Blessing-Co, Inc. (Entity No. 4844279), https://bizfileonline.sos.ca.gov/search/business
     (last visited November 15, 2024); see Fed. R. Evid. 201(b) (courts may take judicial notice of "a fact that is not

28   subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy
     cannot reasonably be questioned."); Daniels–Hall v. National Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010).

93726.   (ECF No. 5.)   The service affidavit indicates that the person served identified as Xiaohong Chen, a person doing business as Moy's Restaurant.   (Id.)

Under Federal Rule of Civil Procedure 4(e)(2)(A), service may be completed by "delivering a copy of the summons and of the complaint to the individual personally."   Here, service affidavit indicates that Chen was served personally at their place of business.   (Id.) Therefore, the Court finds that service was properly effectuated on Chen.

### c.   Han Hong Li, doing business as Moy's Restaurant

Plaintiff proffers he served a copy of the summons and complaint on Han Hong Li on April 11, 2024, by personal service on Li at 2636 East Ashlan Avenue, Fresno, California 93726. (ECF No. 4.)  The service affidavit indicates that the person served identified as Han Hong Li, a person doing business as Moy's Restaurant.   (Id.)

Under Federal Rule of Civil Procedure 4(e)(2)(A), service may be completed by "delivering a copy of the summons and of the complaint to the individual personally."   Here, service affidavit indicates that Li was served personally at their place of business.   (Id.) Therefore, the Court finds that service was properly effectuated on Li.

### d.   Golden Tripod Restaurant Group, LLC, doing business as Noodle Q

On April 4, 2024, Plaintiff served a copy of the summons and complaint on Golden Tripod Restaurant Group, LLC's registered agent Cynthia Thacker, by substituted service on Hector Maldonado, CFO and person authorized to accept on behalf of Cynthia Thacker at 2648 East Ashlan Avenue, Fresno, California 93726.  (ECF No. 7.)[3]  The process server also mailed the papers to Golden Tripod Restaurant Group, LLC on April 5, 2024, to the same address.   (Id.) Plaintiff proffers Golden Tripod Restaurant Group, LLC, a California business entity, was served pursuant to Federal Rule of Civil Procedure 4(h)(1)(A) and California Code of Civil Procedure § 415.20(a).

As discussed above, service may be completed on a corporation or LLC by delivering a

---

[3] The Court notes the California Secretary of State's website lists Cynthia Thacker, located at 2648 E Ashland Avenue, Fresno, California 93726, as the agent authorized to accept service of process for Golden Tripod Restaurant Group, LLC.   Business search results for Golden Tripod Restaurant Group, LLC (Entity No. 201804610009), https://bizfileonline.sos.ca.gov/search/business (last visited November 15, 2024); see Fed. R. Evid. 201(b); Daniels–Hall, 629 F.3d at 998-99.

1    copy of the summons and complaint to the person designated as agent for service of process.  Cal.

2    Code Civ. Proc. § 416.10(a); Cal. Civ. Proc. Code § 415.20(a); <u>see also</u> <u>Khourie, Crew & Jaeger</u>,

3    220 Cal. App. 3d at 1013.  Although the affidavit of service contains largely boilerplate language

4    without many factual details as to how the process server knew Hector Maldonado was the CFO

5    or was otherwise authorized to receive service of process, the Court is satisfied service was

6    properly effected under California's provisions for substitute service on a corporation pursuant to

7    section 415.20(a) on Golden Tripod Restaurant Group, LLC.  Cal. Code Civ. Proc. § 416.10(b).

8            **e.   Golden Tripod Restaurant, LLC, doing business as Noodle Q**

9            On April 4, 2024, Plaintiff served a copy of the summons and complaint on Golden

10   Tripod Restaurant, LLC's registered agent Cynthia Thacker, by substituted service on Hector

11   Maldonado, CFO and person authorized to accept on behalf of Cynthia Thacker at 2648 East

12   Ashlan Avenue, Fresno, California 93726.  (ECF No. 6.)[4]  The process server also mailed the

13   papers to Golden Tripod Restaurant, LLC on April 5, 2024, to the same address.  (<u>Id.</u>)  Plaintiff

14   proffers Golden Tripod Restaurant Group, LLC, a California business entity, was served pursuant

15   to Federal Rule of Civil Procedure 4(h)(1)(A) and California Code of Civil Procedure §

16   415.20(a).

17           As discussed above, service may be completed on a corporation or LLC by delivering a

18   copy of the summons and complaint to the person designated as agent for service of process.  Cal.

19   Code Civ. Proc. § 416.10(a); Cal. Civ. Proc. Code § 415.20(a); <u>see also</u> <u>Khourie, Crew & Jaeger</u>,

20   220 Cal. App. 3d at 1013.  Although the affidavit of service contains largely boilerplate language

21   without many factual details as to how the process server knew Hector Maldonado was the CFO

22   or was otherwise authorized to receive service of process, the Court is satisfied service was

23   properly effected under California's provisions for substitute service on a corporation pursuant to

24   section 415.20(a) on Golden Tripod Restaurant, LLC.  Cal. Code Civ. Proc. § 416.10(b).

25           In sum, the Court finds service was properly effectuated on all defendants.  Accordingly,

26   _____

27   [4] The Court notes the California Secretary of State's website lists Cynthia Thacker, located at 2648 E Ashland
     Avenue, Fresno, California 93726, as the agent authorized to accept service of process for Golden Tripod Restaurant,
     LLC.   Business search results for Golden Tripod Restaurant, LLC (Entity No. 202253916878),

28   https://bizfileonline.sos.ca.gov/search/business (last visited November 15, 2024); <u>see</u> Fed. R. Evid. 201(b); <u>Daniels–
     Hall</u>, 629 F.3d at 998-99.

the Court shall proceed to consideration of whether the Eitel factors would weigh in favor of granting Plaintiff's motion for default judgment.

**B.   Evaluation of the Eitel Factors in Favor of Default Judgment**

For the reasons discussed herein, the Court finds that consideration of the Eitel factors weighs for granting default judgment.

1.   Possibility of Prejudice Toward Plaintiff

Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant.   PepsiCo, Inc., 238 F. Supp. 2d at 1177; Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012). Here, the Court finds Plaintiff would be prejudiced if default judgment were not granted because Plaintiff does not have any other way to recover against Defendants.   See Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014).   This factor weighs in favor of default judgment against Defendants.

2.   Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third Eitel factors, taken together, "require that a plaintiff state a claim on which the [plaintiff] may recover."   PepsiCo, Inc., 238 F. Supp. 2d at 1175 (brackets in original). The complaint asserts claims under the ADA, the Unruh Act, and Health and Safety Code. Plaintiff's motion, however, only requests default judgment with respect to the ADA and the Unruh Act claims.

a.   **Americans with Disabilities Act**

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability" in places of public accommodation.   42 U.S.C. § 12182(a).   "Discrimination" is defined as a failure to make reasonable modifications in policies, practices, or procedures, when modification is necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." Id. § 12182(b)(2)(A)(ii).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is

disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007). Facilities include "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located." 28 C.F.R. § 36.104. Further, "[t]o succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." Hubbard v. 7-Eleven, Inc., 433 F. Supp. 2d 1134, 1138 (S.D. Cal. 2006) (quoting Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000)); see also Wyatt v. Ralphs Grocery Co., 65 F. App'x 589, 590 (9th Cir. 2003).

i.   Whether Plaintiff is Disabled Within the Meaning of the ADA

Plaintiff must allege that he is disabled under the ADA. Molski, 481 F.3d at 730. The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include walking, standing, and hearing. 42 U.S.C. § 12102(2)(A). An individual who is substantially limited in his ability to walk is disabled under the ADA. 42 U.S.C. § 12102.

Plaintiff alleges that he is substantially limited in his ability to walk and uses a cane for mobility. (ECF No. 1, ¶ 8.) Therefore, Plaintiff has adequately pleaded this element of his ADA claim.

ii.   Whether Defendants Own, Lease, or Operate a Place of Public Accommodation

Plaintiff must allege each Defendant "owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a); Molski, 481 F.3d at 730. The Court finds the Facilities are places of public accommodation. This is supported by Plaintiff's allegations (ECF No. 1, ¶¶ 9) and the ADA, which provides that a "restaurant" is considered a public accommodation. 42 U.S.C. § 12181(7)(B).

Plaintiff's complaint generally states that each of the Defendants "own, operate, and/or lease the real property consisting of the real property and common areas of the Facilities as well as the physical structures thereon (including the buildings in which each of the individual Tenant Defendants' Facilities is located), and consists of a person (or persons), firm, or corporation." (ECF No. 1, ¶ 7.)  Plaintiff explains that Defendant Blessing-Co is the landlord for both Moy's Restaurant and Noodle Q.  (Id., ¶ 2, 7.)  In turn, Defendants Chen and Li do business as Moy's Restaurant, and Defendants Golden Group and Golden Tripod Restaurant do business as Noodle Q.  (Id.)

In support that Blessing-Co is the relevant landlord, Plaintiff proffers the Grant Deed evidencing that Blessing-Co. owns the real property (Parcel ID 436-041-02S) on which the Facilities are located.  (ECF No. 16, ¶ 16; ECF No. 16-1, pp. 20-22.)  Further, Plaintiff produced a the most recently filed Statement of Information filed by Blessing Co., Inc. from the California Secretary of State's Business Search database, indicating Blessing-Co, Inc. owns the shopping center at 3750 W Shields Ave, Fresno, California 93722.  (ECF No. 16, ¶ 17; ECF No. 16-1, pp. 24-26.)

Regarding Chen and Li as owners and operators of Moy's Restaurant, Plaintiff has included public records, including an assessor's record for business property tax, a fictitious business name record, and a license from the California Alcoholic Beverage Control.  (ECF No. 16, ¶ 18.)  The Court finds that these records collectively and individually indicate that Xiaohong Chen and Han Li conduct their business of Moy's Restaurant at 2636 East Ashlan Avenue, Fresno, California 93726.  (ECF No. 16-1, pp. 27-30.)

Regarding Golden Tripod Group and Golden Tripod Restaurant as owners and operators of Noodle Q, Plaintiff has included public records, including a Sales and Use Tax for Noodle Q, a Statement of Information filed by Golden Tripod Group and/or Golden Tripod Restaurant from the California Secretary of State's Business Search database.  (ECF No. 16-1, pp. 32-36.)  The Court finds that these records collectively and individually indicate that Golden Tripod Group and/or Golden Tripod Restaurant own and operate Noodle Q located at 2648 East Ashlan Avenue, Fresno, California 93726.  (Id.)

In consideration of the supporting declaration of counsel and supporting property records, the Court finds Plaintiff has sufficiently alleged that Defendant Blessing-Co is the landlord for the businesses of Moy's Restaurant and Noodle Q.  Moreover, the Court finds that Plaintiff has sufficiently alleged that Defendants Chen and Li own and operate Moy's Restaurant, and Defendants Golden Tripod Group and/or Golden Tripod Restaurant own and operate Noodle Q.

### iii.  Plaintiff Was Denied Public Accommodations Due to an Architectural Barrier

(1) Whether Denial of Access Was Due to Disability

Plaintiff must allege and prove that he was denied public accommodations by a defendant because of his disability.  Molski, 481 F.3d at 730.  Here, Plaintiff alleges that he visited Moy's Restaurant on June 14, 2023, and the entrance door was heavy and closed too quickly; the door to the men's restroom had a round door knob that was hard to grasp; the locking mechanism on the door to the toilet required tight pinching; the toilet seat was too low; the toilet seat cover, toilet paper, and paper towel dispensers were too high; the faucet controls on the sink were round and required tight grasping and twisting; and the transaction counter was obstructed by chairs placed in front of it.  (ECF No. 1, ¶¶ 10(a)-(i).)

On June 15, 2023, Plaintiff alleges he visited Noodle Q and there was a loose floor mat near Plaintiff's table that caught on his chair; the door to the men's restroom was heavy and difficult to open for Plaintiff; the locking mechanism on the door to the toilet require tight pinching to operate; the toilet was positioned too far from the side wall, making it hard to use the grab bar and reach for the toilet paper dispenser; and the toilet seat cover, paper towel, and soap dispensers were positioned too high.  (Id. at ¶ 10(j)-(o).)

Thus, the Court finds that Plaintiff has adequately established he was denied access to the Facilities due to his disability.

(2) Architectural Barrier

Congress entrusted the Attorney General with promulgating the implementing regulations for Title III.  Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004) (citing 42 U.S.C. § 12186(b)).  Congress provided that these implementing regulations must be consistent with the minimum guidelines issued by the Architectural and Transportation Barriers Compliance

1   Board, which issued its final ADA Accessibility Guidelines for Buildings and Facilities

2   ("ADAAG") in 1991.  Id.  (citing 42 U.S.C. § 12186(c); 36 C.F.R. Pt. 1191, App. A).  The

3   Attorney General adopted the ADAAG as the "Standards for Accessible Design," which lay out

4   the technical structural requirements of places of public accommodation and are applicable during

5   the design, construction, and alteration of such facilities.  Id.  (citing 28 C.F.R. Pt. 36, App. A).

6   "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility

7   Guidelines."  Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 945 (9th Cir. 2011).

8         Plaintiff proffers that because no discovery has occurred, he does not know if the Facility

9   was constructed or had any alteration done after March 15, 2012, and therefore will apply the

10   1991 ADAAG standards to determine whether a barrier existed at the time of his visit to the

11   Facility.  (ECF No. 13-1, p. 4-5.)  However, Plaintiff submits—and the Court agrees—that the

12   2010 Standards now in effect will govern any injunction which issues, since the remedial work

13   will be undertaken after March 15, 2012.  (Id. at p. 5.)

14         As noted above, Plaintiff alleges that it was difficult for him to navigate the space in the

15   Facilities, including the bathrooms.  Thus, it appears Moy's Restaurant failed to provide a door

16   with the appropriate sweep period; handles or other operating devices on accessible doors,

17   including toilet stall doors, that are easy to grasp and do not require tight pinching or twisting; a

18   toilet at the appropriate height with correctly positioned side and rear grab bars; controls,

19   dispensers, and receptacles, including toilet paper dispenses, within specified reach ranges;

20   acceptable control mechanisms for faucet controls; an accessible sales and service counter, in

21   violation of 1991 ADAAG §§ 4.2.5, 4.2.6, 4.13.10, 4.13.9, 4.16.3, 4.16.6, 4.17.5, 4.17.6, 4.27.3,

22   4.27.4, and 7.2.  (Id. at pp. 5-7.)

23         In addition, it appears that Noodle Q failed to provide secured carpet or carpet tile; a

24   men's room door with the appropriate weight and sweep period; handles or other operating

25   devices on all accessible doors, including toilet stall doors, that are easy to grasp and do not

26   require tight pinching or twisting; a toilet the appropriate distance from the wall and toilet paper

27   dispenser; controls, dispensers, and receptacles within appropriate reach ranges, as well as height

28   ranges, in violation of 1991 ADAAG §§ 4.2.5, 4.2.6, 4.5.3, 4.13.9, 4.13.10, 4.13.11, 4.17.3,

4.17.5, and 4.27.3.  (<u>Id.</u> at pp. 7-8.)

The Court notes that even on default judgment in ADA cases, plaintiffs often present the results of an investigation by an independent consultant, such as a construction expert that takes measurements, or at least a more detailed declaration of the plaintiff in support of the claim that there is an architectural barrier.  Such details do not appear in this instant motion.  Nonetheless, taking the allegations as true for purposes of default judgment as presented by Plaintiff in his complaint, and based on the applicable laws and regulations, the Court finds Plaintiff has sufficiently alleged and demonstrated the presence of architectural barriers at the Facility which violate the ADA.

(3) Whether Removal of the Barrier Is Readily Achievable

Removal of an architectural barrier is "readily achievable" if it is "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C § 12181(9).  Factors to be considered in determining whether such removal is readily achievable include:

> (A) the nature and cost of the action needed under this chapter; (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

<u>Id.</u>  Federal regulations provide examples of readily achievable steps to remove barriers, including: rearranging tables, chairs and other furniture, installing grab bars in toilet stalls, installing a raised toilet seat, repositioning papers towel dispensers in bathrooms, removing high pile, low density carpeting. 28 C.F.R. § 36.304(b).

"All the plaintiff must do at the pleadings stage to proceed under § 12182(b)(2)(A)(iv) is plausibly allege that the barrier's removal is readily achievable."  <u>Whitaker v. Sheikh</u>, No. 21-cv-0493-KJM-KJN, 2022 WL 1262023, at *7 (E.D. Cal. Apr. 28, 2022).  If the defendant fails to plead an applicable affirmative defense, "the plaintiff is effectively entitled to judgment on the

pleadings as to that claim—assuming he pleads the preceding elements of a qualifying disability, a covered public accommodation, and an architectural barrier encountered." Id.; cf. Lopez v. Catalina Channel Express, Inc., 974 F.3d 1030, 1038 (9th Cir. 2020).

Here, Plaintiff alleges that "Defendants can easily remove the architectural barriers at the Facilities without much difficulty or expense, that the cost of removing the architectural barriers does not exceed the benefits under the particular circumstances, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so." (ECF No. 1, ¶ 21.)  In the motion, Plaintiff maintains Defendants can easily remove the barriers without much difficulty or expense.  (ECF No. 13-1, p. 8.)

For purposes of default judgment, the Court finds Plaintiff has plausibly alleged that removal of the architectural barriers he encountered is readily achievable.  Federal regulations provide a non-exclusive list of steps to remove barriers, including rearranging tables, chairs, and other furniture; installing accessible door hardware; installing grab bars in toilet stalls; rearranging toilet partitions to increase maneuvering space; installing a raised toilet seat; repositioning the paper towel dispenser in the bathroom; and removing high pile, low density carpeting.  28 C.F.R. §§ 36.304(b)(4), (11), (12), (13), (15), (17), (20).  Courts have also observed that such listed items are "examples of readily achievable steps to remove barriers" and found similar allegations to those alleged here sufficient at the default judgment stage.  See Johnson v. Garlic Farm Truck Ctr. LLC, No. 20-cv-03871-BLF, 2021 WL 2457154, at *5-*6 (N.D. Cal. Jun. 16, 2021).  Accordingly, the Court finds Plaintiff has met his burden to plausibly show that a proposal for removing certain identified barriers is readily achievable.

In sum, Plaintiff has plausible alleged a prima facie claim for discrimination under Title III against the Defendant owner and operator of the Facilities.  Plaintiff is thereby entitled to injunctive relief for the violations of the ADA as asserted.

**b. California's Unruh Act**

Plaintiff also brings a state law claim for violations of the Unruh Act.  Pursuant to the Unruh Act, all persons are "entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal Civ. Code

§ 51(b).   Additionally, no business establishment of any kind whatsoever shall discriminate against any person in this state on account of disability. Cal. Civ. Code § 51.5.   Unlike the ADA, the Unruh Act permits the recovery of monetary damages, in the form of actual and treble damages, at a statutory minimum of at least $4,000.00 per violation.   Cal. Civ. Code § 52(a); Molski, 481 F.3d at 731; Vogel, 992 F. Supp. 2d at 1011.   After passage of the ADA in 1990, the Unruh Act was amended to provide that a violation of the ADA constitutes a violation of the Unruh Act.   Cal. Civ. Code § 54.1(d).   Thus, the Unruh Act incorporates an individual's rights under the ADA by reference, such that a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code § 51(f).

Here, Plaintiff argues Defendants denied him full and equal accommodations, advantages, facilities, privileges, and services in a business establishment based on his disability.   (ECF No. 1, ¶¶ 35-42.)   Because the complaint properly alleges a prima facie claim under the ADA against the both the owner and operator of the Facilities, the Court finds Plaintiff has also adequately alleged facts establishing the necessary elements for an Unruh Act claim.

Accordingly, the Court finds that the second and third Eitel factors weigh in favor of default judgment as asserted against Defendant Blessing-Co, as landlord of the facilities, Defendants Chen and Li as owners and operators of Moy's Restaurant, and Defendants Golden Tripod Group and Golden Tripod Restaurant as owners and operators of Noddle Q.

### 3.   The Sum of Money at Stake in the Action

The sum of money at stake in this action weighs in favor of granting default judgment. PepsiCo, Inc., 238 F Supp. 2d at 1176; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003).   Default judgment is disfavored where large amounts of money are involved, or the award would be unreasonable in light of the defendant's actions.   G & G Closed Cir. Events, LLC v. Nguyen, No. 3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D. Cal. May 30, 2012); PepsiCo, Inc., 238 F. Supp. 2d at 1176.   Here, in addition to injunctive relief, Plaintiff is seeking statutory damages in the amount of $8,000.00, attorneys' fees in the amount of $2,925.50, and costs of $871.44, for a total award of $11,796.94.   (ECF No. 13-1 at 9-12.)   This is not an excessive amount of money, nor does it seem unreasonable considering the allegations

contained in the complaint.  See Vogel, 992 F. Supp. 2d at 1012 (citing Moore v. Cisneros, No. 1:12-cv-00188 LJO SKO, 2012 WL 6523017, *4 (E.D. Cal. Dec. 13, 2012); Johnson v. Huynh, No. CIV S-08-1189 JAM DAD, 2009 WL 2777021, *2 (E.D. Cal. Aug. 27, 2009).  Accordingly, this factor does not weigh against default judgment.

### 4.   The Possibility of a Dispute Concerning Material Facts

The next Eitel factor considers the possibility of a dispute concerning material facts.  As discussed above, Plaintiff has sufficiently alleged disability discrimination under the ADA and the Unruh Act by demonstrating his encountering of architectural barriers at the Facilities.  The Court finds this factor weighs in favor of entering default judgment as there is no possibility of dispute regarding the material facts due to the factual allegations in the complaint being taken as true upon Defendants' default.  See Garamendi, 683 F.3d at 1080; PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Accordingly, the Court finds this Eitel factor weighs in favor of granting default judgment in favor of Plaintiff against Defendants.

### 5.   Whether Default was Due to Excusable Neglect

The sixth Eitel factor considers the possibility that Defendants' default resulted from excusable neglect.  PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Courts have found that where a defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

The Court finds this factor weighs in favor of granting default judgment because Defendants have failed to file a responsive pleading or otherwise appear in this action, including attending the hearing on the motion for default judgment.  See id.

### 6.   Policy Favoring a Decision on the Merits

Generally, default judgments are disfavored, and a case should be decided on the merits whenever possible.  See Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985). However, the policy favoring decisions on the merits does not weigh against entering default judgment where, as here, Defendants' failure to appear has made a decision on the merits impossible at this juncture.  PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010).  Given the prejudice to Plaintiff if default judgment is not granted, and the merits of the allegations contained in the complaint, granting default judgment in this case would not violate the general policy under the Federal Rules of Civil Procedure favoring decisions on the merits.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Accordingly, the Court finds the policy favoring decisions on the merit does not weigh against entering default judgment against Defendants under these circumstances.

In sum, the Court finds that the Eitel factors weigh in favor of granting default judgment and will recommend that Plaintiff's motion for default judgment be granted.  The Court now turns to the types of relief requested by Plaintiff.

**C.   Requested Relief**

In addition to injunctive relief, Plaintiff seeks statutory damages in the amount of $8,000.00, attorneys' fees in the amount of $2,925.50, and costs of $871.44, for a total award of $11,796.94.  (ECF No. 13-1 at 9-11.)  While the Court will recommend granting Plaintiff's injunction in full, the award of attorneys' fees should be reduced for the reasons discussed below.

1.   Injunctive Relief

Plaintiff seeks an injunction compelling Defendant to comply with the ADA by removing the itemized barriers that Plaintiff personally encountered.  (ECF No. 1, pp. 10-11; ECF No. 13-1, p. 9.)  The ADA provides that "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required" by the ADA.  42 U.S.C. § 12188(a)(2).  A court may grant injunctive relief for violations of the Unruh Act under § 52.1(h).  Vogel, 992 F. Supp. 2d at 1015; Cal. Civ. Code § 52.1.  "Injunctive relief may be granted 'when architectural barriers at defendant's establishment violate the ADA.'"  Johnson v. Pizano, No. 2:17-cv-1655 TLN DB, 2019 WL 2499188, at *6 (E.D. Cal. June 17, 2019) (quoting Vogel, 992 F.Supp.2d at 1015).

Pursuant to federal and California law, Plaintiff is entitled to the removal of those architectural barriers which he encountered on his visit to the Facilities that violated the ADA.  Therefore, an injunction should issue requiring Defendant to remove barriers that are in violation

1  of the ADA and the ADAAG.

2      2.  Statutory Damages

3      Plaintiff seeks statutory damages in the amount of $8,000.00 as authorized by the

4  California Unruh Civil Rights Act.  The Unruh Act provides for minimum statutory damages of

5  $4,000.00 for each violation.  Cal. Civ. Code § 52(a).  Under the Unruh Act, statutory damages

6  may be recovered if a violation of one or more construction-related accessibility standards denied

7  the plaintiff full and equal access to the place of public accommodation on a particular occasion.

8  Cal. Civ. Code § 55.56(a).  A plaintiff is denied full and equal access only when they personally

9  encountered the violation on a specific occasion.  Cal. Civ. Code § 55.56(b).  A litigant need not

10  prove any actual damages to recover statutory damages of $4,000.00 for each violation.  Molski,

11  481 F.3d at 731.

12      Because Plaintiff sufficiently alleged violation of the ADA which established a violation

13  of the Unruh Act, the Court finds that Plaintiff is entitled to statutory damages in the amount of

14  $8,000.00.

15      3.  Attorneys' Fees and Costs

16      Plaintiff seeks attorneys' and paralegals' fees in the amount of $2,925.50, and costs in the

17  amount of $871.44.  (ECF No. 34-1 at 6–8.)  Pursuant to 42 U.S.C. § 12205, the party that

18  prevails on a claim brought under the ADA may recover "a reasonable attorney's fee, including

19  litigation expenses," at the discretion of the Court.  "[U]nder federal fee shifting statutes the

20  lodestar approach is the guiding light in determining a reasonable fee."  Antoninetti v. Chipotle

21  Mexican Grill, Inc., 643 F.3d 1165, 1176 (9th Cir. 2010) (cleaned up).  The Ninth Circuit has

22  explained the lodestar approach as follows:

23      The lodestar/multiplier approach has two parts.  First a court
        determines the lodestar amount by multiplying the number of hours
24      reasonably expended on the litigation by a reasonable hourly rate.
        The party seeking an award of fees must submit evidence
25      supporting the hours worked and the rates claimed.  A district court
        should exclude from the lodestar amount hours that are not
26      reasonably expended because they are excessive, redundant, or
        otherwise unnecessary.  Second, a court may adjust the lodestar
27      upward or downward using a multiplier based on factors not
        subsumed in the initial calculation of the lodestar. The lodestar
28      amount is presumptively the reasonable fee amount, and thus a

21

1  
2  
3

> multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high.

4

Van Gerwin v. Guarantee Mut. Life Co., 214 F.3d 1041,1045 (9th Cir. 2000) (cleaned up).

5  
6  
7  
8  
9  
10  
11

Under the lodestar method, a district court will first determine the appropriate hourly rate for the work performed, and that amount is then multiplied by the number of hours properly expended in performing the work.  Antoninetti, 643 F.3d at 1176.  The district court has the discretion to make adjustments to the number of hours claimed or to the lodestar but is required to provide a clear but concise reason for the fee award.  Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992).  The lodestar amount is to be determined based upon the prevailing market rate in the relevant community.  Blum v. Stenson, 465 U.S. 886, 896 (1984).

12

### a.  Reasonable hourly rate

13  
14  
15  
16  
17  
18

Counsel Tanya Moore ("Moore") has been in practice for over twenty years, with over ten years spent almost exclusively in disability access litigation, and her current billing rate is $650.00.  (ECF No. 16, ¶¶ 4, 6.)  However, Moore is only seeking an hourly rate of $300.00 for her work on this matter.  (Id. at ¶ 6.)  Moore is also seeking an hourly rate of $115.00 for the work of paralegals Whitney Law ("Law"), despite normally billing at a higher rate in the Northern District of California, where the firm is located.  (Id. at ¶ 8.)

19  
20  
21  
22  
23  
24  
25

The lodestar amount is to be determined based upon the prevailing market rate in the relevant community, Blum, 465 U.S. at 896 (1984), which in this matter is the Fresno Division of the Eastern District of California.  "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum, 465 U.S. at 895 n.11.

26  
27  
28

This Court has previously found $300.00 per hour to be a reasonable rate for Moore.  See, e.g., Gilbert v. HBA Enterprises, Inc., No. 1:2-cv-01358-JLT-SAB, 2022 WL 2663761, at *17

(E.D. Cal. July 11, 2022).  Further, in the context of cases alleging violations of the ADA, courts in this district have awarded fees ranging from $250.00 to $325.00 per hour within recent years. See, e.g., Cervantes v. Vargas, No. 1:17-cv-00923-LJO-SKO, 2018 WL 2455615, at *7 (E.D. Cal. June 1, 2018) (awarding $275.00 per hour to attorney with nine years of experience and representation in 275 ADA actions); Block v. Christian, No. 1:16-cv00650-LJO-SKO, 2017 WL 5248402, at *4 (E.D. Cal. Nov. 13, 2017) (finding $325.00 per hour to be a reasonable hourly rate for an attorney with twenty-four years of experience in general litigation and twelve years working on ADA cases).  Accordingly, the Court will recommend that Plaintiff receive the requested $300.00 per hour for the services of Moore.

The Court also recommends that Plaintiff receive the requested $115.00 per hour for the services of Law.  The Court has previously found the rate to be reasonable.  See, e.g., Gilbert, 2022 WL 2663761, at *17; see also Durham v. FCA US LLC, No. 2:17-cv-00596-JLT, 2020 WL 243115, at *9 (E.D. Cal. Jan. 16, 2020) ("Generally, paralegal rates within the Fresno Division of the Eastern District range between $75 to approximately $150.00.").

### b.  Reasonable number of hours

Moore billed 4.5 hours on this matter; Law billed a total of 13.7 hours.  (ECF No. 13-1, p. 11-12; ECF No. 16, ¶¶ 10-11.)  The Court has previously observed that "[b]ased upon the Court's familiarity with the actions filed by Ms. Moore's firm in this court, the Court is aware that [Moore uses a] form complaint [that] is substantially similar to dozens of other actions filed in this district," and previously found "time billed [to be] excessive and duplicative." Lakhani, 2017 WL 1831942, at *7.

Turning to the specific time entries, the Court finds the following billing entries to be clerical in nature, and therefore will reduce the fee awards for those entries accordingly: (1) Law's April 3, 2024 entry from 0.3 hours to 0 hours to review court documents and calendar; (2) Law April 3, 2024, entry from 0.8 hours to 0 hours to "[s]end documents out for service on five defendants;"[5] (3) Law's April 12, 2024 and April 15, 2024 entries from 0.4 hours to 0 hours for

---

[5] In addition to appearing to be primarily clerical, the Court notes that there are three affidavits on the docket reflecting that process server Joshua Masterson mailed service documents to Defendants Blessing-Co, Golden Tripod Group, and Golden Tripod Restaurant.  (ECF Nos. 6-8.)  Further, personal service was effectuated on Defendants

filing and calendaring proofs of service; and (4) Law's September 16, 2024 entry from 0.2 hours to 0 hours to review the Court's standing order.  See Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"); see also Block v. Narwal, Case No. 1:22-cv-00597-ADA-EPG, 2022 WL 17455502, at *11 (E.D. Cal. December 6, 2022) (awarding no fee for Medrano's boilerplate entry wherein he spent ".3 hours 'Review[ing] order setting scheduling conference to calendar hearing date, set deadline to complete Rule 26 call, and deadline to file joint scheduling report'" due to its clerical nature.). Because the Court finds the above-mentioned entries consist of purely clerical work or secretarial tasks, the Court recommends the above reductions.

Further, it is unreasonable for Moore to bill for preparation of CCDA reports, as previous courts have found that such a task is purely clerical and one a non-attorney could perform at a much lower cost.  See, e.g., Block v. Alzamzami, Case No. 1:23-cv-00061-JLT-SKO, 2024 WL 664463 (E.D. Cal. February 16, 2024).  As such, the Court recommends no fee be awarded for Moore's April 10, 2024 entry related to preparation of CCDA reports.

The Court finds the remaining billing entries to have been reasonably expended by Plaintiff's representation.  Totaling the above reductions, the Court finds that a reduction of 0.5 hours is reasonable for Moore and a reduction of 1.7 hours is reasonable for Law.  The Court additionally recommends allocating 0.1 hours for the time Moore expended preparing for and attending the November 20, 2024 hearing, which lasted for less than five minutes.

### c.  Total Reasonable Attorneys' Fee Award and Costs

The Court finds that counsel Tanya Moore reasonably expended 4.1 hours in this litigation at a reasonable rate of $300 per hour, for a total of $1,230.00, and senior paralegal Whitney Law reasonably expended 12 hours at a reasonable rate of $115 per hour, for a total of $1,380.  The Court therefore will recommend awarding Plaintiff $2,610.00 in reasonable attorneys' fees.

### d.  Costs

The ADA authorizes the award of costs for an action.  42 U.S.C. § 12205; see 28 U.S.C.

---

Chen and Li (ECF Nos. 4-5), negating any need for mailing.  Therefore, the Court finds this entry to also be duplicitous.

§ 1920.   Plaintiff seeks costs of $405.00 for filing fees; $425.00 for service expense on Defendants; and $41.44 in postage (ECF No. 16, ¶¶ 12-14, Exs. B, C.)   The Court finds such costs have been reasonably expended in association with this litigation.

**V.**

**CONCLUSION AND RECOMMENDATIONS**

The <u>Eitel</u> factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court.   See <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980).

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1.   Plaintiff's motion for default judgment (ECF No. 34) be GRANTED:

2.   Plaintiff be awarded statutory damages in the amount of $8,000.00;

3.   Plaintiff be awarded attorneys' fees in the amount of $2,610.00;

4.   Plaintiff be awarded costs in the amount of $871.44; and

5.   Plaintiff be GRANTED an injunction requiring Defendants Blessing-Co, Chen, and Li, within six (6) months of entry of the order, to provide disability access by making the following modifications to the property known as known as Moy's Restaurant, located at 2636 East Ashlan Avenue, Fresno, California 93726, such that each item is brought into compliance with the accessibility requirements of the Americans with Disabilities Act and California Code of Regulations, Title 24, by:

   a.   Providing a properly configured entrance door, including sweep time;

   b.   Providing a door to the men's restroom with a properly configured door knob;

   c.   Providing a properly configured locking mechanism on the door to the toilet compartment;

   d.   Providing a properly configured toilet in the men's restroom toilet compartment;

   e.   Providing a properly placed toilet seat cover dispenser in the men's restroom toilet compartment;

   f.   Providing a properly placed toilet paper dispenser in the men's restroom toilet compartment;

g.  Providing properly configured faucet controls on the sink in the men's restroom;

h.  Providing a properly placed paper towel dispenser in the men's restroom; and

i.  Providing a properly configured transaction counter that is unobstructed.

6.  Plaintiff be GRANTED an injunction requiring Defendants Blessing-Co, Inc., Golden Tripod Restaurant Group, LLC, and Golden Tripod Restaurant, LLC, within six (6) months of entry of the order, to provide disability access by making the following modifications to the property known as known as Noodle Q, located at 2648 East Ashlan Avenue, Fresno, California 93726, such that each item is brought into compliance with the accessibility requirements of the Americans with Disabilities Act and California Code of Regulations, Title 24, by:

a.  Providing properly secured floor mats in the facility;

b.  Providing a door to the men's restroom that is properly configured as to weight and sweep time;

c.  Providing a properly configured locking mechanism on the toilet compartment in the men's restroom;

d.  Providing a properly placed toilet within the toilet compartment in the men's restroom;

e.  Providing a properly placed toilet seat cover dispenser in the toilet compartment in the men's restroom; and

f.  Providing a properly placed soap and paper towel dispenser in the men's restroom.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of these recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Further, Plaintiff is HEREBY ORDERED to serve a copy of these findings and recommendations on Defendants within three (3) days of entry.

IT IS SO ORDERED.

Dated:   **November 21, 2024**

STANLEY A. BOONE
United States Magistrate Judge

27